1
2
3
4
5
6

**IN THE UNITED STATES DISTRICT COURT**

7

**FOR THE DISTRICT OF ARIZONA**

8

9    Khikmatdzhon Iakubov,                    No. CV-25-03187-PHX-KML (JZB)

10                    Petitioner,              **ORDER**

11   v.

12   Fred Figueroa, et al.,

13                    Respondents.

14

15      On September 2, 2025, petitioner filed a combined habeas corpus petition under 28

16   U.S.C. § 2241 and complaint for declaratory and injunctive relief. Petitioner alleges his

17   "prolonged and open-ended detention" is contrary to *Zadvydas v. Davis*, 533 U.S. 678

18   (2001), and that he is at risk of being deprived "constitutionally compliant notice and

19   opportunity to respond" before being removed to a third country. (Doc. 1 at 26, 29.)

20   Petitioner filed a motion for temporary restraining order and preliminary injunction that

21   would order his immediate release and prohibit his removal to a third country unless he

22   had been provided "constitutionally compliant protections." (Doc. 2 at 1.) The motion is

23   fully briefed. The parties must file supplemental briefing addressing two issues.

24   **I.    Background**

25      Petitioner is a citizen of Tajikistan and Russia. (Doc. 1 ¶ 12.) Petitioner "identifie[s]

26   as LGBT." (Doc. 1 at ¶ 18.) While he was living in Tajikistan, petitioner "attended a

27   birthday party with other members of the LGBT community." (Doc. 1 at ¶ 19.) The police

28   raided the party and took petitioner to the police station where he was arrested, beaten, and

tortured. (Doc. 1 at ¶¶ 19-20.)

The police then outed petitioner to his family, who attacked him. (Doc. 1 at ¶¶ 21-22.) Petitioner survived and fled to Russia, where he was arrested by the police and tortured. The police also tried to force him to fight in the Russian war against Ukraine. (Doc. 1 at ¶¶ 24-26.) Petitioner came to the United States on January 9, 2024, and was taken into immigration custody. (Doc. 1 at ¶ 28.) At a merits hearing on July 15, 2024, petitioner received withholding of removal to Tajikistan and Russia. No alternate country of removal was identified. (Doc. 1 at ¶ 30.) The BIA affirmed the grant of withholding of removal on February 25, 2025. (Doc. 1 at ¶ 31.) Petitioner remained in custody.

A 90-day custody review was conducted on May 26, 2025 but petitioner was not released. (Doc. 1 at ¶ 38.) Petitioner was supposed to have a 180-day custody review in July 2025, but allegedly no review was "conducted by a Review Panel as envisioned by the regulations." (Doc. 1 at ¶ 42.) Petitioner believes his removal is not likely to occur in the reasonably foreseeable future and he is entitled to be released from custody. Petitioner also fears he will be sent to a third country before being given the opportunity to contest removal to that country.

In responding to petitioner's motion for injunctive relief, respondents argue petitioner's detention is not unconstitutionally prolonged because—as of the date the habeas petition was filed—he had been detained for six months and eight days. And even if that length of detention could be considered prolonged, "the Government has adduced sufficient evidence to show that it has taken active steps to secure Petitioner's removal. The Government has been actively seeking a third country to accept Petitioner and has requests pending with Uzbekistan, Hungary, and Kyrgyzstan." (Doc. 10 at 11.) Those requests were made on April 14, 2025, and no country has responded. (Doc. 10-1 at 3-4.)

**II.    Discussion**

The petition and motion for injunctive relief are fully briefed and the court notifies the parties of its intent to consolidate the request for preliminary injunction with the merits pursuant to Rule 65(a)(2) of the Federal Rules of Civil Procedure.

1    Respondents do not dispute that 8 U.S.C. § 1231 "does not permit indefinite
2    detention." *Zadvydas*, 533 U.S. at 689. Section 1231(a)(6) "implicitly limits an alien's
3    detention to a period reasonably necessary to bring about that alien's removal from the
4    United States and does not permit indefinite detention." *Id.* at 679. Six months is a
5    presumptively reasonable period, but "[a]fter this 6-month period, once the alien provides
6    good reason to believe that there is no significant likelihood of removal in the reasonably
7    foreseeable future," the government must respond by either rebutting that showing or
8    releasing the alien. *Id.* at 701; *Johnson v. Guzman Chavez*, 594 U.S. 523, 529 (2021). The
9    "six-month presumption" "does not mean that every alien not removed must be released
10   after six months. To the contrary, an alien may be held in confinement until it has been
11   determined that there is no significant likelihood of removal in the reasonably foreseeable
12   future." *Zadvydas*, 533 U.S. at 701.

13   As of September 12, 2025, petitioner has been detained for six months and eighteen
14   days. Petitioner therefore has been detained beyond the threshold identified in *Zadvydas*
15   and the burden shifts to the Government to establish it is likely petitioner will be removed
16   in the reasonably foreseeable future. Respondents seem to believe they can carry their
17   burden by pointing to their attempts to identify "a third country to accept Petitioner." (Doc.
18   10 at 1.) Respondents introduce the declaration of Deportation Officer Gerardo Martinez,
19   who states that close to five months ago, ICE officers inquired whether Uzbekistan,
20   Kyrgyzstan, or Hungary would accept petitioner. There has been no response from those
21   countries and respondents do not explain why they believe responses will be forthcoming.
22   Based on the present record, the court is inclined to find there is no significant likelihood
23   of removal in the reasonably foreseeable future and order petitioner's release. But before
24   reaching a final decision, the parties must file supplemental briefs addressing the following.

25   The parties first must provide an update regarding the likelihood of petitioner's
26   removal to a third country. Next, the parties must address whether petitioner's release
27   would render moot his other claims. If it would not, respondents must explain what process
28   they believe must be provided to petitioner. In responding to petitioner's motion for

- 3 -

1    injunctive relief, respondents stated they "will provide Petitioner with due process prior to

2    removing him to a safe third country." (Doc. 10 at 1.) But they did not explain what "due

3    process" they were committing to provide. In their supplemental brief, respondents must

4    identify the exact terms of "due process" they agree to provide which will mean, at the very

5    least, respondents must identify how many days prior to his removal petitioner will be told

6    the country to which he will be removed. Petitioner must address the authority he believes

7    establishes that "21 days' notice" is the minimum notice period that would satisfy due

8    process concerns. (Doc. 1 at 30.)

9         **IT IS ORDERED** no later than **September 18, 2025**, each side shall file a

10   supplemental brief of no more than five pages as outlined above. No later than **September**

11   **22, 2025**, each side shall file a response supplemental brief of no more than three pages.

12        Dated this 15th day of September, 2025.

13

14

15                                        _____
                                          **Honorable Krissa M. Lanham**
16                                        **United States District Judge**

17

18

19

20

21

22

23

24

25

26

27

28